No. 2--04--0204

_________________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Du Page County.

)

Plaintiff-Appellee, )

)

v. ) No. 03--CF--244

)

KEVIN M. KVETON, ) Honorable

) Perry R. Thompson,

Defendant-Appellant. ) Judge, Presiding.

_________________________________________________________________________________

JUSTICE BYRNE delivered the opinion of the court:

Based on an informant's tip, the police stopped defendant, Kevin M. Kveton, outside his home and asked to search a backpack he was carrying.  Defendant allowed the search, which disclosed a lockbox containing cannabis.  The police then entered 
defendant
's home, searched his bedroom, and discovered additional cannabis in a second backpack.  The State charged 
defendant
 with possessing 30 to 500 grams of cannabis with the intent to deliver (720 ILCS 550/5(d) (West 2004)).  Defendant, who was a high school student at the time of the arrest, moved to quash the arrest and suppress the evidence, arguing that the police unlawfully seized and searched him without a warrant, probable cause, reasonable suspicion, or voluntary consent.  The trial court denied the motion, and following a stipulated bench trial, 
defendant
 was found guilty.  The trial court imposed a 60-day jail sentence and a street value fine of $4,760.

On appeal, 
defendant
 renews his argument that he was unconstitutionally seized and searched, and he also argues that he is entitled to a $10 credit for the two days he spent in pretrial custody.  The State responds that the entire encounter was voluntary and consensual, and therefore, 
defendant
's constitutional rights were not implicated.  The State concedes that 
defendant
 is entitled to the $10 credit against his fine.

We recognize that this is a close case, but we conclude that 
defendant
's consent to the initial encounter and ensuing search outside was an involuntary acquiescence to police authority that violated 
defendant
's constitutional rights.  We further conclude that, even if the first search was constitutional, defendant's consent to the second search in his home was involuntary because he was under arrest at that point.

We emphasize that the State has never raised the potentially meritorious argument that the informant's tip justified a seizure of 
defendant
.  In the trial and appellate courts, the State was afforded multiple opportunities to present the argument but chose not to do so.  Therefore, we can surmise only that the State has knowingly abandoned the theory that the tip justified a brief detention for investigation.  In arguing only that 
defendant
 consented to the entire event, the State essentially concedes that the police officers had no reason to believe 
that defendant
 had committed a crime at the time of the encounter.  Because the contraband discovered outside and inside 
defendant
's home was inadmissible, we conclude that the trial court erred in denying 
defendant
's motion to suppress the evidence and quash the arrest.  Therefore, we reverse the judgment and the underlying order denying the motion, and we remand the cause for further proceedings consistent with this opinion.

FACTS

At the hearing on the suppression motion, the defense introduced the testimony of 
defendant
 and Travis Rossow, his friend and classmate who was present at the time of the search.  Defendant testified that, at 4:30 p.m. on January 24, 2002, he and Rossow were walking from the front door of defendant's house to Rossow's car, which was facing south on the street in front of defendant's house.  An unmarked police car, which was traveling northbound toward them at 35 to 40 miles per hour, crossed into the oncoming lane, and "came to a screeching halt" in front of Rossow's car.  The police car's front bumper faced the front bumper of Rossow's car.  Approximately 30 seconds later, a marked squad car arrived from the other direction and parked behind Rossow's car.  Defendant and Rossow had not yet entered Rossow's car, but 
defendant
 believed that they could not leave in the car because the police cars blocked its path.

Two police officers exited the unmarked police car, and according to 
defendant
, the officers were in uniform.  Officer Scott Klecka, "in a directive voice," told defendant to "get over here."  Defendant knew Officer Klecka and had spoken to him twice before because the officer was stationed at 
defendant
's high school.  Defendant had not experienced any "hard times" with Officer Klecka, but the officer occasionally had raised his voice to 
defendant
 at school before the date of the arrest.

Defendant walked toward Officer Klecka as directed.  The officer did not draw his handgun or handcuffs or use profanity, but he said that he knew what 
defendant
 "was up to" and asked what the backpack contained.  Defendant responded, "I think you know what's in the bag."  As 
defendant
 was standing near the driver's-side front tire of the police car, Officer Klecka told 
defendant
 that he was under arrest.  Officer Klecka directed 
defendant
 to open the backpack, and 
defendant
 believed that he had no choice but to comply.  At one point, Officer Klecka also conducted a pat-down search of 
defendant
.  During 
defendant
's encounter with Officer Klecka, Rossow was conversing with the second officer on the other side of the unmarked police car.

Because 
defendant
 preferred not to open the backpack in view of onlookers, he asked whether he could open it elsewhere.  Officer Klecka agreed, opened the rear door of the police car, and assisted 
defendant
 in placing the bag in the backseat.  Defendant unzipped the backpack and Officer Klecka examined the inside.  Officer Klecka removed a lockbox, which had not been visible when the bag was closed.  Officer Klecka directed 
defendant
 to unlock the box.  Defendant removed a key from his chain, gave it to Officer Klecka, and the officer used it to open the box, which contained cannabis.

One of the officers asked 
defendant
, "[W]hat's in the house[?]" and 
defendant
 dropped his head without saying anything.  The officer then said "let's get going" and led 
defendant
 inside the house, where the three officers searched for more contraband.  Defendant denied consenting to the search of the house.  Officer Klecka handcuffed 
defendant
 and placed him in the police car.

Rossow, who also knew Officer Klecka from the school, generally corroborated 
defendant
's testimony.  Rossow testified that Officer Klecka parked the police car at a 45-degree angle so that it faced his car.  Rossow was entering his car when Officer Klecka exited his vehicle "pretty fast" and shouted 
defendant
's name in a "loud, demanding" tone.  Rossow paused, and Officer Latronica walked toward him and began questioning him about his identity, residence, and plans for the day.  Meanwhile, Officer Klecka called 
defendant
 over to him, and 
defendant
 complied.  Officer Klecka told 
defendant
, "you know you are under arrest, right?"  Defendant looked down and did not answer.  Officer Klecka then asked 
defendant
, "[W]hat's in your backpack[?]" and directed 
defendant
 to open it.  Defendant asked whether he should open the bag in the open, and the officer responded by leading him to the rear seat of the police car, where they opened it and removed the lockbox.  Officer Klecka asked 
defendant
 for the key to the lockbox, 
defendant
 produced it, and the officer opened the box.  Rossow testified that he was within five or six feet of 
defendant
 and Officer Klecka and could observe and overhear their conversation.

When Officer Klecka finished searching the lockbox, a second marked police car arrived and parked behind Rossow's car.  Before the officers entered 
defendant
's house, one of them told Rossow, "[y]ou are free to go."  Rossow did not feel free to leave until he was told he could do so.  Rossow's interaction with the police lasted 10 to 15 minutes.

Officer Klecka was the only witness to testify for the State.  On January 24, 2003, Officer Klecka arrested Vincent Manna, a student at 
defendant
's school, for possession of cannabis.  Manna told Officer Klecka that the cannabis "wasn't his" and that he "usually buys from [defendant]."  Manna also said that 
defendant
 usually kept a quarter- to one-half-pound of cannabis stored in clear plastic bags in a beige lockbox in his bedroom at home.  Manna told Officer Klecka that he had most recently seen cannabis in 
defendant
's bedroom four days earlier.

Based on Manna's tip, Officer Klecka and Officer Latronica drove directly to 
defendant
's home.  Officer Klecka testified that, at the time he left the station, he decided that he would stop 
defendant
 if he was on foot but would not stop him if he was in a car.  When the officers arrived, they found 
defendant
 and Rossow walking across the front yard toward Rossow's car.

Officer Klecka pulled his car to the curb so that it faced Rossow's car but still allowed Rossow to pull out.  The cars were positioned so that the width of the driveway plus one car length separated them.  Officer Klecka exited the car and, in a normal tone, told 
defendant
, "I want to talk to you."  The officer testified that 
defendant
 was free to leave and not under arrest at that time.  If 
defendant
 had declined to speak with the officers, they would have allowed him to leave.  Officer Klecka remained standing next to his car door, and 
defendant
 walked toward him while carrying a backpack.

Officer Klecka told 
defendant
 that he knew "what he ha[d] been doing," and 
defendant
 lowered his head and sighed deeply.  Officer Klecka asked 
defendant
 "how much pot he had with him," and 
defendant
 nodded his head and admitted that he was carrying some in the backpack.  Meanwhile, Officer Latronica was speaking with Rossow near Rossow's car.

After acknowledging possession of the cannabis, 
defendant
 asked, "[C]ould we go somewhere else so my sister doesn't see this[?]"  Officer Klecka said "no."  Defendant then asked whether he could open the backpack in the police car, and Officer Klecka agreed and opened the rear car door.  Defendant opened the bag in the rear seat of the police car, removed the lockbox, retrieved a key from his key chain, and unlocked the box.  The officer denied ordering 
defendant
 to open the box.  The lockbox contained a digital scale, money, and clear plastic bags that contained something that appeared to be cannabis.

Officer Klecka closed the lockbox and backpack, placed them in the trunk of his car, and asked 
defendant
 how much cannabis was inside his house.  Defendant responded that there was one "bong" inside but that there was no more cannabis.  At that point, Rossow drove away, and Officer Malatia arrived in a marked police car as backup.  Officer Klecka believed that 
defendant
 was under arrest.

According to Officer Klecka, defendant led the three officers into the house.  Defendant never told the officers that they could not search the house.  Officer Klecka followed 
defendant
 to an upstairs bedroom, where he told his sister that he had been "selling weed" and was sorry.  Officers Latronica and Malatia discovered a green leafy substance in 
defendant
's bedroom.  Officer Klecka testified that, during the entire encounter, he did not raise his voice or "command" 
defendant
 to do anything.  Defendant was calm, compliant, and nonargumentative.

On cross-examination, Officer Klecka admitted that Manna did not say whether 
defendant
 possessed any contraband on the date of the arrest.  Officer Klecka also admitted that the lockbox was not visible until 
defendant
 opened the backpack.  Officer Klecka stated that 
defendant
 was under arrest at the moment he saw the plastic bags of cannabis inside the lockbox, but he admitted that 
defendant
 was not admonished of his 
Miranda
 rights at that time.  Nothing in the record indicates that 
defendant
 was ever informed of his 
Miranda
 rights.

Manna testified for the defense as a rebuttal witness.  Manna stated that he was summoned to the dean's office at his school on January 24, 2003.  Manna was transported to the police station, where he spoke with Officer Klecka about some cannabis that was discovered in his locker.  Manna admitted to the officer that he had been dealing cannabis at school, and he identified 
defendant
 as his "competition."  Manna was arrested.  Manna denied telling Officer Klecka that he saw drugs in 
defendant
's home four days before the arrest.  In fact, Manna testified that he truthfully told Officer Klecka that he most recently saw 
defendant
 with cannabis three months before the date of 
defendant
's arrest.

The trial court denied the motion to suppress the evidence and quash the arrest.  The court found that Manna's tip "simply [got] the detective to the scene."  The court concluded that, although the evidence did not support a stop pursuant to 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), defendant was not seized and the search was proper because the encounter was voluntary and consensual.  The trial court made the following oral finding:

"Clearly, if [Officer Klecka] did detain [defendant], [the officer] would have needed a 
Terry
 basis to do this and it's not here.  So it has to be a voluntary encounter, casual encounter, and it's your burden, [defense counsel].  I hold that you did not meet it.  I'll deny your motion."

Defendant waived his right to a jury, and the parties stipulated that certain evidence would be presented at trial.  In considering a ruling on a motion to suppress, a reviewing court may consider evidence presented at trial as well as the evidence that was presented at the suppression hearing.  
People v. Serio
, 357 Ill. App. 3d 806, 814 (2005).  Thus, we briefly summarize the stipulated evidence because it is relevant to our review of the suppression motion.

Officer Klecka would supplement his testimony from the suppression hearing with testimony that 
defendant
 consented to the search of his bedroom after disclosing the cannabis in the lockbox outside.  On 
defendant
's bedroom floor, Officers Klecka, Latronica, and Malatia discovered a second backpack, which contained two additional plastic "baggies" of cannabis and a coffee grinder.  Defendant initially denied ownership of the cannabis in the second backpack, but he "basically admitted that [it] was in fact his cannabis and he had forgotten it was in the bedroom."

Defendant was transported to the Lombard police department, where he gave oral and written statements admitting that he sold cannabis primarily to his friends to help them "stay away" from harder drugs like cocaine.  Defendant had one or two sources from whom he purchased a quarter- to one-half-pound of cannabis at a time.

Jean Kinnane, a forensic scientist with the Du Page County Crime Lab, would testify that the contents of the plastic baggies from the two backpacks tested positive for cannabis.  The total weight of the cannabis was 460 grams.  Kinnane did not specify the separate weights of cannabis discovered in the two searches.  Based on the stipulation, the trial court found 
defendant
 guilty and imposed the sentence.  This timely appeal followed.

ANALYSIS

On appeal, 
defendant
 argues that the cannabis was inadmissible as the fruit of his involuntary acquiescence to a showing of police authority.  Defendant further argues that the informant's tip gave the arresting officer neither probable cause to arrest nor reasonable and articulable suspicion to stop 
defendant
.  The State's sole argument on appeal is that 
defendant
 voluntarily consented to the initial stop and the two searches, which yielded contraband outside and inside the home.  As a final matter, defendant argues, and the State agrees, that 
defendant
 is entitled to a $10 credit toward his fine for the two days he spent in pretrial custody.

A. Standard of Review

In reviewing a circuit court's ruling on a motion to suppress evidence, mixed questions of law and fact are presented.  A reviewing court will uphold findings of historical fact made by the circuit court unless such findings are against the manifest weight of the evidence.  This deferential standard of review is grounded in the reality that the circuit court is in a superior position to determine and weigh the credibility of the witnesses, observe the witnesses' demeanor, and resolve conflicts in their testimony.  However, a reviewing court remains free to undertake its own assessment of the facts in relation to the issues presented and may draw its own conclusions when deciding what relief should be granted.  Accordingly, we review 
de
 
novo
 the ultimate question of whether the evidence should be suppressed.  
People v. Jones
, 215 Ill. 2d 261, 268 (2005).

In this case, the trial court did not expressly assess the credibility of the witnesses at the hearing on the suppression motion.  For instance, Manna and Officer Klecka offered conflicting testimony as to the substance of Manna's tip: Manna testified that he had last seen 
defendant
 with cannabis more than three months before the arrest, while Officer Klecka testified that Manna told him that 
defendant
 had cannabis in his bedroom as recently as four days before the arrest.  The trial court disregarded the inconsistency, finding that Manna's tip "simply got the detective to the scene" to facilitate a consensual encounter.  Also, the court did not expressly determine whether Officer Klecka blocked Rossow's car, but the court stated that Officer Klecka "push[ed] the limit of what is a defense versus a voluntary encounter on the street."  The court's ultimate ruling supports the inference that Officer Klecka was found to be more credible than 
defendant
 and Rossow.

Defendant concedes that the trial court was not manifestly erroneous in crediting Officer Klecka.  For purposes of this appeal, 
defendant
 cites the officer's version of the events while disputing the ultimate issue of whether he voluntarily consented to any part of the encounter.  In light of 
defendant
's concession in this case, we construe the evidence in favor of the State.  However, we review the trial court's ultimate determinations 
de
 
novo
.

B. Burden of Proof

Both the fourth amendment to the United States Constitution (U.S. Const., amend. IV) and article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, §6) protect individuals from unreasonable searches and seizures.  In interpreting the search and seizure provision of the Illinois Constitution, Illinois courts look to the United States Supreme Court's fourth amendment jurisprudence.  
People v. Smith
, 214 Ill. 2d 338, 349 (2005).

Interaction between the citizenry and the police can be divided into nonconsensual and consensual encounters.  
People v. Murray
, 137 Ill. 2d 382, 387 (1990); 
People v. Luedemann
, 357 
Ill. App. 3d
 411, 416 (2005).  The former consist of arrests and 
Terry
 stops.  
Murray
, 137 Ill. 2d at 387; 
Luedemann
, 357 
Ill. App. 3d
 at 416.  The latter do not infringe upon any interest protected by the fourth amendment and therefore require no justification.  
Luedemann
, 357 
Ill. App. 3d
 at 416.

The arrest of a citizen must be supported by probable cause.  
People v. Gherna
, 203 
Ill. 2d
 165, 176 (2003).  "Probable cause exists when the facts and circumstances known by the arresting officer are sufficient to warrant a reasonable person's belief that the arrested individual has committed an offense."  
Gherna
, 203 
Ill. 2d
 at 176.  A 
Terry
 stop of a citizen is a temporary investigative seizure that is permitted within the parameters of the fourth amendment when the officer has a reasonable, articulable suspicion of criminal activity, and such suspicion amounts to more than a mere " 'hunch.' "  
Gherna
, 203 
Ill. 2d
 at 177, quoting 
Terry
, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883.

In this case, the State did not argue in the trial court--and does not argue on appeal--that the informant's tip or any other evidence gave the police probable cause to arrest or reasonable suspicion to initiate a 
Terry
 stop of 
defendant
.  In fact, the State expressly concedes that "this case does not involve a 
Terry
 situation."  The trial court reached the same conclusion.  On appeal, the parties frame the fourth amendment issue by agreeing that the voluntariness of 
defendant
's consent is dispositive of the issue of the contraband's admissibility.

It is well settled that an individual may voluntarily consent to a search, thereby eliminating the need for probable cause and a warrant.  
Smith
, 214 
Ill. 2d
 at 349.  The validity of a consent search depends on the voluntariness of the consent.  
People v. Anthony
, 198 
Ill. 2d
 194, 202 (2001).  Whether consent to a search was voluntary is a question of fact determined from the totality of the circumstances.  
Smith
, 214 
Ill. 2d
 at 350.

Consent is voluntary only if "received, not extracted 'by explicit or implicit means, by implied threat or covert force.' " 
Anthony
, 198 Ill. 2d at 202, quoting 
Schneckloth v. Bustamonte
, 412 U.S. 218, 228, 36 L. Ed. 2d 854, 863, 93 S. Ct. 2041, 2048 (1973).  " 'In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents.' " 
Anthon
y, 198 
Ill. 2d
 at 202, quoting 
Schneckloth
, 412 U.S. at 229, 36 L. Ed. 2d at 864, 93 S. Ct. at 2049.

Defendant and the State dispute who had the burden of proof on the suppression motion and whether the burden was met.  The State argues on appeal that 
defendant
 "failed to meet his burden of proof because he failed to demonstrate that the encounter was anything but voluntarily consensual."

In 
People v. Gipson
, 203 Ill. 2d 298 (2003), our supreme court described the burden of proof on a motion to suppress evidence.  In Illinois, by statute, the defendant bears the burden of proof at a hearing on a motion to suppress.  725 ILCS 5/114--12(b) (West 2004); 
Gipson
, 203 Ill. 2d at 306.  A defendant must make a 
prima
 
facie
 case that the evidence was obtained by an illegal search or seizure.  
Gipson
, 203 
Ill. 2d
 at 306-07.  If a defendant makes a 
prima
 
facie
 case, the State has the burden of going forward with evidence to counter the defendant's 
prima
 
facie
 case.  
Gipson
, 203 
Ill. 2d
 at 307.

In 
Gipson
, the supreme court held that the "defendant made his 
prima
 
facie
 case by showing that [the officer] searched the trunk of [the] defendant's car without a warrant."  
Gipson
, 203 
Ill. 2d
 at 307.  Consistent with 
Gipson
, this court has held that a 
defendant
 makes a 
prima
 
facie
 case of an illegal search and seizure by establishing that "he was doing nothing unusual (his conduct was not indicative of the commission of a crime) and he was arrested without a warrant."  
People v. Garvin
, 349 Ill. App. 3d 845, 851 (2004).  Here, defendant was walking with his friend from the front door of his house 
to his friend's car.  Defendant
 was doing nothing unusual at the time Officers Klecka and Latronica approached him, and the arrest was not supported by a warrant.  Therefore, the burden shifted to the State to go forward with evidence to establish the validity of the search.

The 
Gipson
 court held that, although the burden may shift to the State to counter the 
defendant
's 
prima
 
facie
 case, "the ultimate burden of proof remains with the defendant."  
Gipson
, 203 
Ill. 2d
 at 307.  In 
Gipson
, the court held that the State met its burden of going forward with the evidence when the arresting officer testified that he discovered the incriminating evidence incident to a routine tow inventory of the 
defendant
's car, which is a judicially created exception to the fourth amendment warrant requirement.  
Gipson
, 203 
Ill. 2d
 at 304, 307.  The 
court concluded that the defendant
 failed to meet the ultimate burden of proof on the suppression motion because defense counsel did not challenge the officer's assertion that he complied with the department's procedures for inventory searches.  
Gipson
, 203 
Ill. 2d
 at 307-08.

In this case, the State countered defendant's 
prima
 
facie
 case with Officer Klecka's testimony that the encounter was based on 
defendant
's consent, which does not implicate the fourth amendment.  See 
Smith
, 214 
Ill. 2d
 at 349.  The State contends that the officer's testimony shifted the burden back to 
defendant
 to establish that his consent was involuntary.  
Gipson
 supports the State's position, but other supreme court cases, which 
Gipson
 does not address, support the opposite result.

In 
Anthony
, our supreme court held that the circuit court correctly suppressed cocaine discovered during an allegedly consensual pat-down search because "the 
State
 failed to establish that the defendant voluntarily consented to a search of his person."  (Emphasis added.)  
Anthony
, 198 Ill. 2d at 203-04.  Moreover, in 
People v. Casazza
, 144 
Ill. 2d
 414 (1991), the supreme court held that "the voluntariness of a consent to a police search depends on the totality of the circumstances and it is the 
State's
 burden to show by a preponderance of the evidence that the consent was voluntarily given."  (Emphasis added.)  
Casazza
, 144 
Ill. 2d
 at 417.

In denying the motion, the trial court stated that 
defendant
 failed to meet his burden of proof.  It is unclear from the judge's oral statements whether he was referring to establishing a 
prima
 
facie
 case of involuntariness or the statutorily imposed "ultimate" burden of proving the unlawfulness of the search.  Nevertheless, the ambiguity of the court's ruling on the suppression motion does not prevent us from reviewing it.  See 
People v. Statham
, 209 
Ill. App. 3d
 352, 362-63 (1991) (holding that, even though "[i]t [was] unclear whether the trial court was referring in its oral ruling to the burden of proving that an initial encounter was consensual or to the ultimate burden to prove that a seizure was unlawful," the appellate court could affirm the denial of the suppression motion because the State met its burden of proof).

Anthony
 and 
Casazza
 suggest that, once a 
defendant
 shows a warrantless search and the State counters with evidence that the 
defendant
's consent legitimizes the search, the burden remains with the State to prove the voluntariness of the consent by a preponderance of the evidence.  At least in the context of establishing the voluntariness of an accused's consent to a search, 
Anthony
 and 
Casazza
 appear to be at odds with the rule, set forth in 
Gipson
 and section 114--12(b) of the Code of Criminal Procedure of 1963, that the ultimate burden of proof on a motion to suppress evidence rests with the 
defendant
.
(footnote: 1)  We conclude that a reconciliation of the authority is unnecessary because, even if 
defendant
 had the ultimate burden of proving that his consent to the searches was involuntary, 
defendant
 met that burden of proof.

C. The Initial Stop and Search Outside

Defendant contends that, under 
Gherna
 and cases like it, his initial encounter with the police outside was a seizure, and therefore, his consent to the subsequent searches was involuntary.  See 
People v. Green
, 358 
Ill. App. 3d
 456, 463 (2005) (if, in light of all the circumstances surrounding an officer's request for consent to search, a reasonable person in the 
defendant
's position would not have felt free to leave, the consent is deemed involuntary and will not justify the search).

For purposes of the fourth amendment, an individual is "seized" when an officer " 'by means of physical force or show of authority, has in some way restrained the liberty of a citizen.' "  
Florida v. Bostick
, 501 U.S. 429, 434, 115 L. Ed. 2d 389, 398, 111 S. Ct. 2382, 2386 (1991), quoting 
Terry
, 392 U.S. at 19 n.16, 20 L. Ed. 2d at 905 n.16, 88 S. Ct. at 1879 n.16.  A seizure does not occur simply because a law enforcement officer approaches an individual and puts questions to that person if he or she is willing to listen.  
United States v. Drayton
, 536 U.S. 194, 200, 153 L. Ed. 2d 242, 251, 122 S. Ct. 2105, 2110 (2002); 
Florida v. Royer
, 460 U.S. 491, 497, 75 L. Ed. 2d 229, 236, 103 S. Ct. 1319, 1324 (1983) (plurality op.).  "So long as a reasonable person would feel free 'to disregard the police and go about his business,' [citation], the encounter is consensual and no reasonable suspicion is required."  
Bostick
, 501 U.S. at 434, 115 L. Ed. 2d at 398, 111 S. Ct. at 2386, quoting 
California v. Hodari D.
, 499 U.S. 621, 628, 113 L. Ed. 2d 690, 698, 111 S. Ct. 1547, 1552 (1991).  However, when, taking into account " 'all the circumstances surrounding the incident' " (
Immigration & Naturalization Service v. Delgado
, 466 U.S. 210, 215, 80 L. Ed. 2d 247, 255, 104 S. Ct. 1758, 1762 (1984), quoting 
United States v. Mendenhall
, 446 U.S. 544, 554, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980)), a person is deemed seized if the conduct of the police would lead a reasonable innocent person under identical circumstances to believe that he or she was not "free to decline the officers' requests or otherwise terminate the encounter" (
Bostick
, 501 U.S. at 436, 115 L. Ed. 2d at 400, 111 S. Ct. at 2387).  Accordingly, the analysis hinges on an objective evaluation of the police conduct and not upon the subjective perception of the individual approached.  
Hodari D.
, 499 U.S. at 628, 113 L. Ed. 2d at 698, 111 S. Ct. at 1551.

In 
Gherna
, two uniformed officers, while riding bicycles clearly marked "police," passed by the defendant seated in her parked car with her 13-year-old daughter.  One of the officers observed a bottle of beer in the center console and decided to investigate because the defendant's passenger appeared to be under the age of 21.  
Gherna
, 203 
Ill. 2d
 at 168.  The officers approached the defendant on bicycles, and they were wearing short-sleeved shirts and short trousers, but they displayed police badges on their shirts, and they were equipped with a full complement of police gear, including weapons, radios, handcuffs, and flashlights.  
Gherna
, 203 
Ill. 2d
 at 179.  One officer positioned himself and his bicycle at the driver's door, while the other officer positioned himself and his bicycle at the passenger's door.  Upon taking these positions, the officers proceeded to identify the occupants.  
Gherna
, 203 
Ill. 2d
 at 179.

The officers determined that the defendant was over the age of 21, but they still suspected that her passenger was under 21.  
Gherna
, 203 
Ill. 2d
 at 179-80.  The officer then asked the defendant to hand him the bottle of beer because he wished to ascertain if any underage drinking had taken place.  The defendant handed over the beer, which was unopened and in its original container.  The officer handed the bottle back to the defendant and concluded that illegal alcohol consumption had not occurred.  
Gherna
, 203 
Ill. 2d
 at 180.  The officer testified that he and the 
defendant
 began "casually talking," which ultimately led to the discovery of narcotics on the 
defendant
's person.  
Gherna
, 203 
Ill. 2d
 at 169-70.

The supreme court held that the 
defendant
 was seized at the moment the officer asked her to hand him the bottle of beer, because "a reasonable innocent person in defendant's position would not have felt 'free to decline the officers' requests or otherwise terminate the encounter.' "  
Gherna
, 203 
Ill. 2d
 at 180, quoting 
Bostick
, 501 U.S. at 436, 115 L. Ed. 2d at 400, 111 S. Ct. at 2387.  The court concluded that, at that instant, the positioning of the officers and their bicycles, which prevented the defendant from either exiting the vehicle or driving away, combined with the request for the bottle on the heels of other questioning, would " ' "have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." ' "  
Gherna
, 203 
Ill. 2d
 at 180, quoting 
Bostick
, 501 U.S. at 437, 115 L. Ed. 2d at 400, 111 S. Ct. at 2387, quoting 
Michigan v. Chesternut
, 486 U.S. 567, 569, 100 L. Ed. 2d 565, 569, 108 S. Ct. 1975, 1977 (1988).

In this case, Officers Klecka and Latronica drove in an unmarked police car toward 
defendant
's home, and when they saw him exit the house, they crossed the center line, entered oncoming traffic, and parked their vehicle so that it faced the car in which 
defendant
 planned to leave.  The two cars were the width of the driveway plus another car length apart.  Officer Klecka, whom 
defendant
 immediately recognized as a police officer, then exited the car and told 
defendant
 that he wished to speak with him.  The officer did not shout or use profanity, draw his weapon or handcuffs, or otherwise threaten 
defendant
.  However, when 
defendant
 walked to Officer Klecka, the officer immediately told 
defendant
 that he "knew what [he] was up to" and accused him of possessing cannabis.

At the moment the officers arrived, 
defendant
 did not experience a physical restriction of movement like the 
defendant
 in 
Gherna
.  Officer Klecka was standing next to his open car door when he called out to 
defendant,
 who was standing several feet away in his front yard.  Theoretically, defendant could have walked in any direction or ridden away in Rossow's car to physically avoid the officers, but he walked toward Officer Klecka when called.

We conclude that, even if 
defendant
's movement was not restricted physically, the nature of the officers' arrival and Officer Klecka's immediate accusation of wrongdoing conveyed a sense of gravity and urgency that made 
defendant
 reasonably believe that he was the target of a drug investigation and was not free to leave.
(footnote: 2)  See 
People v. Brownlee
, 186 
Ill. 2d
 501, 520 (1999) ("officers restrained the movements of [a] car's occupants by their show of authority").  Officer Klecka testified that he drove toward 
defendant
's home at a normal speed and did not come to a "screeching" halt.  However, his maneuver of crossing the center line and entering oncoming traffic before stopping indicated that he felt it necessary to violate a traffic law (see 625 ILCS 5/11--701 (West 2004)) to intercept defendant before he left the scene.  The officers rode in an unmarked police car and were not in uniform, but there is no dispute that 
defendant
 recognized Officer Klecka as a police officer who investigated crime and held a position of authority at his school.  The combination of 
defendant
's youth, the urgency of the officer's arrival, 
defendant
's familiarity with Officer Klecka, and the immediate accusation of cannabis possession would certainly intimidate a high school student like 
defendant
.  In fact, the officers' subtle coercion is evidenced by 
defendant
's reaction to the drug accusation:  Officer Klecka testified that 
defendant
 responded by dropping his head.  This gesture can be construed as an act of submission and resignation to an inevitable arrest.

The State emphasizes Officer Klecka's testimony that he would have allowed 
defendant
 to leave if defendant had declined to speak with the officers upon their arrival.  However, our analysis focuses on an objective evaluation of the police conduct (see 
Hodari D.
, 499 U.S. at 628, 113 L. Ed. 2d at 698, 111 S. Ct. at 1552), and whether that conduct would communicate to a reasonable person that he was not at liberty to ignore the police presence and go about his business (see 
Gherna
, 203 
Ill. 2d
 at 180).  Therefore, Officer Klecka's belief that 
defendant
 was free to leave is discounted by the officer's physical actions that suggest otherwise.

The State and 
defendant
 cite 
People v. Purchase
, 214 
Ill. App. 3d
 152 (1991), and 
Anthony
, respectively, to support their positions on the voluntariness of 
defendant
's admission to cannabis possession and his consent to the search outside.

In 
Purchase
, the 
defendant
's wife was alone at home when two police officers arrived at her door inquiring about several thefts from a store.  When she denied any knowledge of the thefts, one of the officers noticed that she was pregnant and told her that they would put her in jail and take custody of her baby if she did not cooperate.  The officer asked her to sign a piece of paper, and when she asked what it was, he concealed the top part of the document and stated that it indicated her cooperation.  The officers also falsely told her that they had a lawful search warrant.  Fearful of losing her baby, the 
defendant
's wife signed the consent form.  Five police officers searched the home for about nine hours and eventually seized several items.  
Purchase
, 214 
Ill. App. 3d
 at 153.  The 
defendant
 arrived home approximately two hours after the search began, and one of the officers restated the threat to take the couple's baby to coerce the 
defendant
 to sign a consent form.  
Purchase
, 214 
Ill. App. 3d
 at 154.  Noting that the consent was obtained through "coercion and trickery," the appellate court held that the trial court was not manifestly erroneous in finding the consent to be involuntary.  
Purchase
, 214 
Ill. App. 3d
 at 155.

On appeal, the State argues that 
defendant
's consent was voluntary because the egregious and overtly coercive conduct of the officers in 
Purchase
 did not occur here.  The State fails to recognize that, while the 
existence
 of overt coercion in 
Purchase
 supported a finding of involuntary consent, the 
absence
 of such conduct does not necessarily compel a finding of voluntariness here.  We agree with 
defendant
 that the factual dissimilarity between the cases renders 
Purchase
 unhelpful.

In 
Anthony
, two uniformed officers were on routine walking patrol when they saw the defendant, a black male, walk out the front door of a residence.  The officers believed that a white female was the home's only resident, but, aside from his presence in the community, the 
defendant
 was doing nothing unusual.  When the 
defendant
 saw the officers, he turned and walked down an alley adjacent to the building.  
Anthony
, 198 
Ill. 2d
 at 197-98.

The officers first contacted the defendant from 50 feet away by calling to him down the alley.  
Anthony
, 198 Ill. 2d at 203.  The searching officer then proceeded to ask the defendant a series of increasingly accusatory questions, such as the nature of his business in the area and whom he knew in the apartment complex.  Although the officers did not threaten the 
defendant
, his apprehension was apparent, as his voice stuttered, his hands shook, and he reached into and out of his pants pockets.  The searching officer asked the 
defendant
 to keep his hands out of his pockets.  The 
defendant
 complied, but the officer continued to question the 
defendant
 by inquiring whether he " 'had anything on him that he shouldn't have, anything like guns, drugs, knives, anything that could hurt me or my partner.' " 
Anthony
, 198 
Ill. 2d
 at 203.

The 
defendant
 denied possessing any such items, but the officer continued the questioning by requesting consent to search the 
defendant
's person.  
Anthony
, 198 
Ill. 2d
 at 203.  Rather than giving verbal consent, the 
defendant
 " 'assumed the position' " of an arrestee by spreading his legs and placing his hands on top of his head.  
Anthony
, 198 Ill. 2d at 203.  The officer, who never threatened or made any physical contact with the 
defendant
 before the search, construed the action as nonverbal consent.  
Anthony
, 198 
Ill. 2d
 at 198.

Our supreme court found the 
defendant
's gesture to be ambiguous, susceptible to dueling inferences of voluntary consent and submission to a uniformed officer who had just asked him accusatory questions, in essence telling the officer to " 'do what [he] had to do.' "  
Anthony
, 198 Ill. 2d at 203, citing 
United States v. Giuliani
, 581 F. Supp. 212, 218 (N.D. Ill. 1984) (holding that a suspect's statement to drug enforcement agents to " 'Do what you have to do' " does not constitute voluntary consent to search a suitcase).  The supreme court held that the State failed to meet its burden of proving the voluntariness of the consent, and therefore, the trial court correctly suppressed the cocaine discovered during the search.  
Anthony
, 198 
Ill. 2d
 at 203-04.

Defendant cites 
Anthony
 in arguing that his consent to search was involuntary because he merely acquiesced to a showing of police authority when the officer accused him of possessing cannabis.  We agree.  In 
Anthony
, the supreme court concluded that the 
defendant
 was seized when he acquiesced to police authority by " 'assum[ing] the position' " for the search after facing increasingly accusatory questions.  In light of the totality of the circumstances, we conclude that 
defendant
 was seized when Officer Klecka accused him of cannabis possession.  Upon hearing the accusation, defendant did not "assume the position" for a search of his person, but he dropped his head in silence in recognition that he was about to be arrested and could not leave.

D. The Search Inside the Home

Defendant argues on appeal that his entire encounter with Officer Klecka was nonconsensual, and therefore, all of the cannabis should have been suppressed.  The State does not distinguish between the searches that disclosed cannabis outside and inside 
defendant
's home.  The State introduced evidence of the total weight of the cannabis seized but did not specify how much was discovered in 
defendant
's bedroom.  However, the additional cannabis clearly affected the seriousness of the charge and the corresponding street value fine.  Therefore, we address whether 
defendant
's fourth amendment rights were violated by the search of his bedroom and the second backpack found therein.

The State argues that, because the trial court credited testimony that 
defendant
 led the three officers into the home, the second search--like the first--was justified by 
defendant
's voluntary consent, which does not implicate his fourth amendment rights.  Assuming 
arguendo
 that the search of the backpack outside 
defendant
's home was consensual, we nonetheless conclude that his consent to the search of his bedroom was involuntary.

As discussed, a seizure occurs, and the fourth amendment is implicated, when a reasonable person would not feel free to leave under the circumstances.  
Mendenhall
, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877; 
Luedemann
, 357 
Ill. App. 3d
 at 421.  Officer Klecka testified that 
defendant
 was under arrest as soon as the cannabis in the lockbox was disclosed outside.  In fact, we conclude that 
defendant
 was under arrest at an even earlier point: when Officer Klecka told him that he was not free to "go somewhere else" to open the backpack away from the view of his sister.  In any event, the parties agree that 
defendant
 was not free to leave after the cannabis in the lockbox was disclosed.  Therefore, there can be no dispute that 
defendant
 was seized before the police requested permission to search his home.

In light of all the circumstances surrounding Officer Klecka's request to search the home, a reasonable person in 
defendant
's position would not have felt free to leave.  Therefore, 
defendant
's consent to the search of the home is deemed involuntary and does not justify the search.  See 
Green
, 358 
Ill. App. 3d
 at 463.  The involuntariness of 
defendant
's consent to the home search is further evidenced by the officers' failure to admonish 
defendant
 of his 
Miranda
 rights before the search.  Thus, the contraband discovered during the search of 
defendant
's home must be suppressed unless the search can be otherwise justified.

In 
People v. Hassan
, 253 
Ill. App. 3d
 558 (1993), the Appellate Court, First District, discussed the implication of a warrantless, involuntary search of an accused's home:

"The 'chief evil' against which the fourth amendment was intended to protect the people was the 'physical entry of the home.'  (
Spicer
, 163 Ill. App. 3d at 87, 516 N.E.2d at 496, citing 
Payton
, 445 U.S. at 585, 63 L. Ed. 2d at 650, 100 S. Ct. at 1379.)  Therefore, any search or seizure within a home without a warrant is presumptively unreasonable.  (
Payton
, 445 U.S. at 586, 63 L. Ed. 2d at 651, 100 S. Ct. at 1380.)  The 
Payton
 Court recognized 'the long-settled premise that, absent exigent circumstances, a warrantless entry to search for weapons or contraband is unconstitutional even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within.'  (
Payton
, 445 U.S. at 587-88, 63 L. Ed. 2d at 651-52, 100 S. Ct. at 1381.)  '[N]o amount of probable cause can justify a warrantless search or seizure absent "exigent circumstances." '  (
Coolidge v. New Hampshire
 (1971), 403 U.S. 443, 468, 29 L. Ed. 2d 564, 584, 91 S. Ct. 2022, 2039.)  If an officer merely needed probable cause in order to search a suspect's home, ' "the provisions of the Fourth Amendment would become empty phrases, and the protection it affords largely nullified." '  (
People v. Kelley
 (1982), 104 Ill. App. 3d 51, 54, 432 N.E.2d 630, 632, quoting 
Jones v. United States
 (1958), 357 U.S. 493, 497-98, 2 L. Ed. 2d 1514, 1518-19, 78 S. Ct. 1253, 1256-57 (1958)).  The Supreme Court also has recognized certain narrow exceptions to the warrant requirement besides the existence of 'exigent circumstances,' such as the 'protective sweep' (
Maryland v. Buie
 (1990), 494 U.S. 325, 108 L. Ed. 2d 276, 110 S. Ct. 1093) and the 'search incident to arrest.'  
Chimel v. California
 (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034."  
Hassan
, 253 
Ill. App. 3d
 at 567-68.

1. 
Search Incident to Arrest

In this case, there is no evidence to support the invocation of the narrow exceptions to the warrant requirement to justify the police intrusion into 
defendant
's home.  In 
Chimel
, the Court held that, upon lawfully arresting a person in his home, the police may search the area within the suspect's "immediate control" from which he might obtain a weapon or destroy incriminating evidence.  Here, 
defendant
 was arrested as soon as the lockbox was opened in the rear seat of Officer Klecka's police car.  Defendant was not arrested in his home, 
defendant
 had no immediate access to any part of his home, and none of the officers had been lawfully inside 
defendant
's home.  Moreover, nothing in the record suggests that any of the officers feared for their safety at any point of the encounter.  Therefore, the 
Chimel
 exception to the warrant requirement does not render the cannabis from the bedroom search admissible.  See 
Hassan
, 253 
Ill. App. 3d
 at 572-73.

2. 
Exigent Circumstances

In 
Hassan
, the police officers, acting on an anonymous tip, set up surveillance of the defendant's home and witnessed several people walk up to the house and exchange money for small packages from the defendant.  One of the undercover police officers walked to the front door, knocked, and asked, " 'what you got?' "  
Hassan
, 253 Ill. App.3d at 562.  The defendant retrieved a small packet from the bar and handed it to the police officer, at which time the officer announced his office and attempted to arrest the defendant.  The defendant tried to close the door but was unsuccessful.  He then pushed the door open and ran into the front yard, where he was apprehended and arrested.  The police officers entered the home, and their search disclosed narcotics.  The appellate court concluded that the police unlawfully entered the defendant's home to search for the narcotics.  The court stated, "[w]e believe that there was probable cause to believe that a quantity of cocaine was on the premises, but there was no 'emergency' which required a quick response.  The officers could have obtained a warrant without the risk that the suspect would escape or harm others.  ***  In short, *** there was no need for swift action."  
Hassan
, 253 Ill. App. 3d at 571.  The appellate court reversed the trial court's denial of the 
defendant
's motion to suppress evidence, concluding that in the absence of exigent circumstances, the police intrusion into the defendant's home was not justified.

Like in 
Hassan
, there were no exigent circumstances to justify the police intrusion into 
defendant
's home even though there might have been probable cause to believe that there was cannabis on the premises.  The police officers could have sought a warrant based on the evidence legally seized from the lockbox, without the risk of 
defendant
 escaping or harming others.

3. 
Protective Sweep

In 
Maryland v. Buie
, 494 U.S. 325, 334-35, 108 L. Ed. 2d 276, 286-87, 110 S. Ct. 1093, 1098-99 (1990), the Supreme Court held that an officer, after lawfully arresting a suspect in his home, may make a "protective sweep" of the premises to check for dangerous individuals if the officer possesses "specific articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene."  Our supreme court has recognized the permissibility of a protective sweep of a suspect's house " 'even though the arrest itself was achieved without entry.' "  
People v. Free
, 94 Ill. 2d 378, 396-97 (1983), quoting 2 W. LaFave ྷ6.4(c), at 431 (1978).  "An officer's suspicion, however, must be based 'upon something more concrete than the mere physical capacity of a structure to harbor unseen occupants.' "  
Hassan
, 253 
Ill. App. 3d
 at 573, quoting 
United States v. Wiga
, 662 F.2d 1325, 1330 (9th Cir. 1981). " '[B]are suspicion unsupported by articulable facts will not justify a protective search.' "  
Hassan
, 253 
Ill. App. 3d
 at 573, quoting 
Wiga
, 662 F.2d at 1330.

In this case, defendant disclosed that his sister was in the house, but nothing in the record suggests that the officers viewed her as a safety risk.  The physical capacity of the structure to harbor unseen persons is the only fact the officers could articulate that would lead them to believe that other people were on the premises.  Officer Klecka articulated no specific facts that would lead him or any of the other officers to believe that there was an individual on the premises who posed a risk of harm to them.  Manna, the informer, did not tell Officer Klecka that 
defendant
, Rossow, or anyone in 
defendant
's home might be armed.  Manna merely stated that 
defendant
 was selling drugs from a lockbox.  Upon arriving at the scene, the officers did not observe any person besides 
defendant
 and Rossow enter or leave the house.  The officers asked to enter the house for the sole purpose of searching for additional contraband.  Therefore, we conclude that the police intrusion into 
defendant
's home is not justified as a protective sweep.

CONCLUSION

We conclude that the trial court erred in denying 
defendant
's motion to suppress the evidence and quash the arrest.  Therefore, we reverse the judgment, and we remand the cause for further proceedings.  In light of the reversal, we need not comment on the sentence-credit issue.

For the preceding reasons, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded.

Reversed and remanded.

O'MALLEY, P.J., and HUTCHINSON, J., concur.

FOOTNOTES
1:
We note that neither 
Gipson
 nor its progeny defines the "ultimate burden of proof" that a 
defendant
 must bear.

2:
We again note that the State does not argue that the informant's tip gave the officers a reasonable suspicion of criminal activity.